**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

SHATTUCK PHARMACY )
MANAGEMENT, P.C. d/b/a MEDIC )
PHARMACY AND GIFTS, a )
Domestic For-Profit Corporation, )
individually, and on behalf of itself )
and all others similarly situated; and )
KYLENE REHDER, on behalf of )
herself and all others similarly )
situated, )
                               )
   Plaintiffs, )
                               )
-vs- )   Case No. CIV-21-0221-F
                               )
PRIME THERAPEUTICS, LLC, a )
Foreign Limited Liability Company; )
HEALTH CARE SERVICE )
CORPORATION, a Mutual Reserve )
Company; and BLUE CROSS AND )
BLUE SHIELD OF OKAHOMA, a )
Division of Health Care Service )
Corporation, )
                               )
   Defendants. )

## ORDER

This action primarily brings claims for declaratory and injunctive relief under
the (Oklahoma) Pharmacy Audit Integrity Act, 59 O.S. 2011 & Supp. 2020 §§ 356
*et seq*., and the (Oklahoma) Patient's Right to Pharmacy Choice Act, 36 O.S. Supp.

2020 §§ 6958 *et seq.* There is also a claim for tortious interference with business relations, seeking damages.[1]

## I. The Motions

A motion to remand and two motions to dismiss are before the court.

Doc. no. 30. Plaintiffs Shattuck Pharmacy Management, P.C. d/b/a Medic Pharmacy and Gifts (Medic) and Kylene Rehder (Rehder) move for remand. Defendants Prime Therapeutics, LLC (Prime), Health Care Service Corporation (HCSC), and Blue Cross and Blue Shield of Oklahoma (BCBSOK), have responded, objecting to remand. Doc. no. 38. Plaintiffs filed a reply brief. Doc. no. 39. Defendants filed a sur-reply brief. Doc. no. 44.

Doc. no. 33. HCSC and BCBSOK move for dismissal. Plaintiffs responded, objecting to dismissal. Doc. no. 42. Movants filed a reply brief. Doc. no. 45.

Doc. no. 35. Prime moves for dismissal. Plaintiffs responded, objecting to dismissal. Doc. no. 41. Prime filed a reply brief. Doc. no. 46.

For the reasons stated below, the motion to remand will be denied, and the motions to dismiss will be granted.

## II. The Complaint[2]

The complaint alleges as follows.

---

[1] At times, the complaint references "Oklahoma law," however, no statutes other than the Pharmacy Audit Integrity Act and the Patient's Right to Pharmacy Choice Act, and no torts other than tortious interference with business relations, are identified in the complaint. Plaintiffs concur with the court's interpretation of the complaint as alleging only these claims. *See,* doc. no. 42, p. 10 of 17 and n. 3.

[2] This order refers to the "Class Action Petition" (doc. no. 1-4) as "the complaint."

Plaintiff Medic is a pharmacy operating in the town of Shattuck, located in Ellis County, Oklahoma.  Doc. no. 1-4, ¶1.  Plaintiff Rehder is a resident of Shattuck and Ellis County.   Rehder carries BCBSOK health insurance and is a patient (customer) of Medic.  *Id*. at ¶ 2.  Medic and Rehder bring certain claims on their own behalf and other claims as the purported class representative of the Medic Class or the Rehder Class, respectively.

Defendants include HCSC, a mutual reserve company, and BCBSOK, a division of HCSC.  HCSC and BCBSOK do business as health insurers.  The other defendant is Prime, which operates as a pharmacy benefit management company (PBM) on behalf of HCSC and BCBSOK. *Id*. at ¶¶ 3-5, 8.  PBMs are hired by insurance companies to administer the prescription drug portion of health insurance plans; they act as a middleman between the insurance company and the pharmacy. *Id*. at ¶ 9.  The complaint alleges HCSC and BCBSOK should be held accountable for Prime's wrongful conduct because Prime has apparent authority to act as a PBM on their behalf.  *Id*. at ¶¶ 104-110.

The complaint alleges that Prime failed to comply with the Pharmacy Audit Integrity Act and the Patient's Right to Pharmacy Choice Act in various ways, such as:  by conducting an audit of Medic in a manner which violated the Pharmacy Audit Integrity Act;[3]  and by giving notice, in violation of the Patient's Right to Pharmacy

---

[3] The audit allegedly resulted in a November 24, 2020 termination notice indicating that Prime would terminate Medic from insurance networks managed by Prime, including BCSC and BCBSOK, due to claims phishing and missing documentation. The complaint alleges that Prime failed to establish an electronic claim inquiry processing system as required by the Patient's Right to Pharmacy Choice Act, with the result that Medic had no way to verify its patients' insurance coverage without submitting an actual claim to Prime.  The complaint alleges that Medic appealed the termination notice per the procedure set out in § 356.3 of the Pharmacy Audit Integrity Act but that Prime has not resolved issues raised in the appeal.

Choice Act, that Prime intended to terminate Medic from Prime's network despite the fact that Prime, as a PBM, is allegedly required to have a retail pharmacy participating in Prime's network within fifteen miles of seventy per cent of the covered individuals residing in Shattuck, Oklahoma, and in Ellis County, Oklahoma.[4]  The complaint alleges population statistics for Shattuck and Ellis County and alleges that other than Medic, the nearest pharmacies are thirty miles from Shattuck.

The complaint seeks declaratory relief based on defendants' alleged violations of the Pharmacy Audit Integrity Act and the Patient's Right to Pharmacy Choice Act.  For example, plaintiffs seek declarations that Medic did not engage in claims phishing, that Medic had adequate and proper documentation at the time of the audit, that Prime has not complied with the Pharmacy Audit Integrity Act or the Patient's Right to Pharmacy Choice Act, and that Prime cannot terminate Medic from Prime's networks.  *See*, *e.g.*, *id.*, prayer at ¶ iv.  Claims for declaratory relief are brought by Medic on its own behalf (*id.* at ¶¶ 61-63), by the Medic Class (*id.* at ¶¶ 83-85), and by the Rehder Class (*id.* at ¶¶ 94-97).

The complaint brings claims for injunctive relief seeking to prohibit Prime and its alleged agents, HCSC and BCBSOK, from terminating Medic from Prime's networks pending final disposition of this action.  *See*, *e.g.*, *id.*, prayer at ¶ v.  Claims

---

[4]  The termination notice allegedly advised Rehder and others that Medic's termination would be effective on February 27, 2021.  Medic was not terminated on that date because the state court entered a temporary restraining order on February 24, 2021, preserving the status quo.  After removal, the parties submitted an agreed order to this court, which this court entered. That order (doc. no. 28) dissolved the state court's restraining order and put certain conditions in place, including a requirement that defendants give sixty-days notice of intent to terminate.

for injunctive relief are brought by Medic on its own behalf (*id*. at ¶¶ 64-68) and by the Rehder Class (*id*. at ¶¶ 98-102).

In addition, Medic, on its own behalf, alleges that Prime, acting for itself and HCSC and BCBSOK, tortiously interfered with Medic's business relations between Medic and its patients (customers) who carry BCBSOK insurance and who live around Shattuck and in Ellis County. *Id*. at ¶¶ 69-74. The complaint alleges that due to Prime's interference, Medic has sustained financial losses in excess of $10,000.00. *Id*. at ¶ 74.

### III.  The Motion to Remand

#### A.  Standards

Prime, as the removing party, bears the burden to show removal is proper. Cousina v. Massachusetts Mutual Life Insurance Co., 2012 WL 6726453 at *2 (N.D. Okla. Dec. 27, 2012), citing Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995).[5]  In ruling on a motion to remand, a court should determine its jurisdiction over the case based on plaintiffs' pleadings at time of removal, supplemented by any affidavits or deposition transcripts filed by parties. *Id*., citing Guillory v. PPG Industries, Inc., 434 F.3d 303 (5th Cir. 2005); Davis ex rel. Estate of Davis v. General Motors Corp., 353 F. Supp. 2d 1203 (M.D. Ala. 2005). Just as with any jurisdictional question, the court may go outside the pleadings to determine matters such as citizenship. *See generally*, E.E.O.C. v. Unit Drilling Co., 4 F. Supp. 3d 1257, 1261 (N.D. Okla. 2013) ("court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).").

---

[5] Laughlin has been abrogated on other grounds.

## B. Discussion

Plaintiffs argue that Prime erroneously relied on 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441, which plaintiffs argue apply to removal of a single civil action and not to the removal of a class action. Plaintiffs argue that because this action is a class action, the applicable removal provisions are found in the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453. Plaintiffs argue the requirements for removal under CAFA are not met. Specifically, they argue that § 1332(d)(2) is not satisfied because the amount in controversy does not exceed five million dollars, that diversity of citizenship has not been established under §1332(d)(10) because BCBSOK is an Oklahoma citizen, and that 28 U.S.C. §1332(d)(4)(A) prohibits removal.

These arguments obviously depend upon plaintiffs' contention that this action was required to be removed under CAFA. CAFA, however, does not displace a party's ability to remove under traditional diversity principles. *See*, *e.g.*, Lowrimore v. Severn Trent Environmental Servs., Inc., 2016 WL 799127 at *1, n.3 (E.D. Okla. Feb. 29, 2016) (CAFA does not displace conventional diversity class action rules but rather augments them, so that federal subject matter jurisdiction may be premised on either); Stell v. Gibco Motor Express, LLC, 2016 WL 2620178 at *2 (S.D. Ill. May 9, 2016) ("CAFA does not replace the basic diversity requirements; it supplements them. That means that a class action case not arising under federal law can be lodged in federal court if it meets *either* the basic diversity requirements *or* CAFA's requirements," quoting 2 W. Rubenstein, Newberg on Class Actions § 6:6, 5th ed., emphasis in Rubenstein).

This action was expressly removed based on 28 U.S.C. § 1332(a), that is, based on traditional diversity jurisdiction. Doc. no. 1, ¶ 14. As shown by the

authorities cited above, this is permitted even when the action is a class action. Accordingly, the court rejects plaintiffs' arguments for remand which are advanced under CAFA.

That is not the end of the remand issue because plaintiffs' reply brief argues that traditional diversity of citizenship is not satisfied.[6]  It is undisputed that Medic and Rehder are citizens of Oklahoma for diversity purposes.[7]  *Id*. at ¶¶ 15-17 (notice of removal, citing complaint).  Plaintiffs argue that the defendants are also citizens of Oklahoma, defeating diversity.  Accordingly, the court addresses the citizenship of each of the defendants.

HCSC.  Defendants argue that HCSC is a mutual legal reserve company organized and existing under the laws of the State of Illinois, with its principal place of business in Chicago, so that HCSC is a citizen of Illinois for diversity purposes. *Id*. at ¶ 19.  Plaintiffs argue:  that because HCSC has not filed articles of incorporation with the Secretary of State of Illinois, "there is no legal way HCSC is a corporation" (doc. no. 39, p. 5 of 13); that because HCSC is not a corporation, HCSC "has to be" an unincorporated association (*id.* at p. 6 of 13), which Illinois law would define as a joint venture or partnership, making HCSC's citizenship determined by that of its members; that HCSC claims on its website (*see*, doc. no. 39-4, p. 3 of 4) to be owned by customers or policyholders; and that BCBSOK, a

---

[6] The fact that plaintiffs did not raise this argument in their moving brief is of no moment because the court has a duty to determine its jurisdiction at any stage.

[7] The citizenship of the named representatives is considered, not that of the class members.  *See*, Ullman v. Safeway Insurance Co., 995 F. Supp. 2d 1196, 1246-47 (D. N. Mex. 2013) (conventional diversity invoked rather than diversity under CAFA; only the citizenship of the named representatives of the class are considered, citing Wright, Miller & Kane, Federal Practice and Procedure, § 1755 at 70 (3d ed. 2008)).

division of HCSC, has policyholders in Oklahoma (such as Rehder), making HCSC a citizen of Oklahoma.

Plaintiffs' argument regarding the citizenship of HCSC is rejected. HCSC has submitted documents showing that, as a mutual legal reserve company, it is registered with the Illinois Department of Insurance and is therefore considered incorporated under the Illinois Insurance Code and thus an Illinois corporation. Doc. no. 44-1, attaching documents. Based on Illinois Insurance Code, 215 Ill. Comp. Stat. §§ 5/1 *et seq*., defendants have shown that at the time the complaint was filed and at the time of removal, HCSC was (and is) considered to be an Illinois corporation, making HCSC a citizen of Illinois for purposes of diversity. *See*, Cousina v. Massachusetts Mutual Life Ins. Co., 2012 WL 6726453 at *1 (N.D. Okla. Dec. 27, 2012) (quoting 16 Couch on Insurance §229:22: "In accordance with…well-settled principles, '[w]hen the appropriate regulatory agency has recognized that an entity has been properly incorporated pursuant to state law, no further inquiry is appropriate in determining whether that entity is a corporation for diversity purposes; hence, mutual insurance companies that are incorporated under state law are treated as corporations for diversity purposes.'"); Thorne v. State Farm Mutual Automobile Insurance Co., 2015 WL 809530 at *3 (M.D. Fla. Feb. 25, 2015) (under Illinois law, State Farm Mutual Auto Insurance Company, an Illinois mutual insurance company, is treated as a corporation; it had sufficiently alleged its citizenship in Illinois for the purpose of diversity jurisdiction).

BCBSOK. Plaintiffs argue that BCBSOK is a citizen of Oklahoma based on "common sense" and their contention that BCBSOK "was incorporated 81 years ago in Oklahoma…." Doc. no. 39, p. 8. None of the documents provided by plaintiffs establish that BCBSOK is an incorporated entity, much less that it is incorporated in

Oklahoma. On the other hand, as shown by documents submitted by defendants with their motion to dismiss, BCBSOK has been an unincorporated division of HCSC since November 1, 2005 and continues to operate as such. Doc. no. 33-1, ¶¶ 3-4. As an unincorporated division of HCSC, the citizenship of BCBSOK is the same as the citizenship of HCSC. The court has found that HCSC's citizenship is Illinois. Accordingly, BCBSOK is deemed a citizen of Illinois. *See*, Equifax Services, Inc. v. Hitz, 905 F.2d 1355, 1358, n.2 (10th Cir. 1990) (as White & White had merged into Equifax and operated as an unincorporated division, its citizenship was the same as that of Equifax, the corporation of which it was a part).

Prime. Plaintiffs argue that Prime, a limited liability company, is a citizen of Oklahoma because HCSC and BCBSOK are members of Prime and citizens of Oklahoma. The court has rejected the premise that HCSC and BCBSOK are citizens of Oklahoma. Moreover, Prime has filed a disclosure statement listing its members and their citizenship. Doc. no. 3. According to the disclosure statement, Prime's members are citizens of Alabama, Kansas, Nebraska, Rhode Island, Wyoming, Pennsylvania, Illinois, North Dakota, Florida, North Carolina, Oregon and Minnesota. *Id*. Prime is deemed a citizen of these states but not Oklahoma.

The court rejects plaintiffs' argument that the citizenship requirements for traditional diversity jurisdiction are not met.

The other requirement for traditional diversity jurisdiction is that the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332(a). (Plaintiffs do not argue that this requirement is not met.[8] Regardless, to assure itself of jurisdiction,

---

[8] Plaintiffs challenged the $5 million requirement of 28 U.S.C. § 1332(d)(2) but did not challenge the $75,000.00 requirement of § 1332(a).

the court addresses this issue.)  This action seeks to enjoin Prime's termination of Medic from Prime's network of providers; accordingly, Medic's continued operation as a for-profit pharmacy is at stake.  This action also seeks damages, including punitive damages (doc. no. 1-4, prayer, ¶ ix), for tortious interference with Medic's business relations, based on notices Prime allegedly sent to Medic's patients advising them of Medic's then-upcoming termination.  The notice of removal includes an affidavit from the Director of Special Investigations Unit at Prime, stating the total amount Medic received in reimbursements from Prime for submitted prescriptions during the period of October 2020 through March 14, 2021(a five-and-one-half-month period) is $139,003.54.  Doc. no. 1-2, ¶ 8.  The amount in controversy requirement is satisfied.

The court has jurisdiction, and the motion to remand will be denied.

## IV.  HCSC and BCBSOK's Motion to Dismiss

HCSC and BCBSOK move for dismissal from this action under Rule 12(b)(6).[9]

## A.  Rule 12(b)(6 Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  *Id.*

---

[9] The court declines to address the service issues raised by HCSC and BCBSOK under Rule 12(b)(5).  It does so because it concludes these defendants are entitled to dismissal under Rule 12(b)(6).  *See*, Jordan v. Morris, 2015 WL 3449867, *3, n. 2 (D. Kan. May 29, 2015) (court need not address service issues where claims fail under Rule 12(b)(6), collecting authorities).

The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009).

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Prime's Apparent Authority to Act for HCSC and BCBSOK

HCSC and BCBSOK contend the allegations regarding Prime's apparent authority to act on their behalf are conclusory. Although the alleged facts pertinent to this theory of liability are thin, the complaint includes facts which plausibly allege that Prime, when acting vis-à-vis Medic, had apparent authority to act for HCSC and BCBSOK. For example, the complaint alleges that based on various agreements and assignments, Prime has served as a pharmacy benefit management company for HCSC and BCBSOK. Doc. no. 1-4, ¶¶ 11-13. The complaint alleges that as a PBM,

Prime is hired by insurance companies "to administer the prescription drug portion of health insurance…plans," and that it "acts as a middleman between the insurance companies and the pharmacies." *Id*. at ¶¶ 2, 8-9. These and other allegations are incorporated in the portion of the complaint that specifically addresses apparent authority. Although it is a close call, this argument for dismissal is rejected.

### C. Adoption of Prime's Arguments for Dismissal

HCSC and BCBSOK adopt the arguments for dismissal made by Prime. Doc. no. 33, p. 2, n. 2. The court addresses Prime's arguments next, after which it will address the impact of those rulings on HCSC and BCBSOK.

### V. Prime's Motion to Dismiss

Prime moves for dismissal from this action under Rule 12(b)(6).

### A. Statute-Based Claims for Declaratory or Injunctive Relief

Prime argues the claims for declaratory or injunctive relief fail because the statutes upon which they are premised—the Pharmacy Audit Integrity Act and the Patient's Right to Pharmacy Choice Act—do not create a private cause of action.

### 1. The Pharmacy Audit Integrity Act

It is undisputed that no private right of action is expressly created by the Pharmacy Audit Integrity Act, 59 O.S. §§ 356 *et seq.* Plaintiffs' ability to allege claims founded on this Act therefore depends on whether a private cause of action should be implied despite the legislature's silence on that issue.

Under Oklahoma law, a private right of action may be implied from a regulatory (public-law) state statute only if: 1) plaintiff is one of the class for whose *especial* benefit the statute was enacted (this factor is narrowly construed); 2) there is some indication of legislative intent, explicit or implicit, suggesting the legislature wanted to create a private remedy and not deny one; and 3) the court finds that

implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme. <u>Holbert v. Echeverria</u>, 744 P.2d 960, 963 (Okla. 1987) (emphasis in original);[10] <u>Elliot Plaza Pharmacy, LLC v. Aetna U.S. Healthcare, Inc.</u>, 2009 WL 702837 at *2 (N.D. Okla. Mar. 16, 2009) (citing <u>Holbert</u>).

Medic argues the first <u>Holbert</u> requirement is met because the Pharmacy Audit Integrity Act is for the "especial benefit" of pharmacies. The court disagrees. The Act's purpose is "to establish minimum and uniform standards and criteria for the audit of pharmacy records by or on behalf of certain entities." 59 O.S. § 356.1(B). Uniformity of standards benefits not only pharmacies but also the public and entities that conduct pharmacy audits. The Act is not for the "especial benefit" of pharmacies.

The second requirement, which <u>Hobert</u> notes the United States Supreme Court has placed special emphasis on,[11] is whether there is any indication of legislative intent, explicit or implicit, to create or deny a private remedy. Neither the Pharmacy Audit Act nor the broader Oklahoma Pharmacy Act[12] includes a civil penalty. Furthermore, the Oklahoma Pharmacy Act provides that "violation of any provision of the Oklahoma Pharmacy Act for which no penalty is specifically provided shall be punishable as a misdemeanor." 59 O.S. § 353.25(A). In general, a statutory scheme which says nothing about a civil penalty but provides a criminal penalty indicates the legislature did not intend to create a private right of action to enforce

---

[10] <u>Holbert</u>'s holding that the Oklahoma Consumer Protection Act did not provide a private right of action has been superseded by statute.

[11] <u>Holbert</u>, 744 P.2d 960, 964. The <u>Holbert</u> test was adopted from <u>Cort v. Ash</u>, 422 U.S. 66 (1975).

[12] The Oklahoma Pharmacy Act, first enacted in 1993, is at 59 O.S. §§ 353-66. *See*, 59 O.S. § 353(A).

the statute. *See*, <u>Engels v. Kirkes</u>, 2013 WL 3367254, *3 (E.D. Okla. July 3, 2013) (statute did not provide private remedy because, in part, violation of statute was punishable as a misdemeanor).

In addition, Oklahoma's regulatory scheme gives authority to the State Board of Pharmacy to enforce the Oklahoma Pharmacy Act. 59 O.S. § 353.7. The Board is empowered to investigate complaints, subpoena witnesses and records, initiate prosecution, hold hearings and perform other duties as enforcement of the Oklahoma Pharmacy Act may require. 59 O.S. § 353.7(10), (18).

Section 356.3 of the Pharmacy Audit Integrity Act sets out procedures for the appeal of an audit report to be lodged with the entity that conducted the audit. The Act provides that following the appeal, any final audit report that includes findings of fraud or willful misrepresentation shall be referred to the district attorney with jurisdiction or the Attorney General of the State of Oklahoma. 59 O.S. § 356.3(C).

There is nothing in Oklahoma's regulatory scheme which suggests the legislature intended the Pharmacy Audit Integrity Act to create a private cause of action. In fact, the regulatory scheme suggests the opposite. The basic thrust of this legislation is to establish an administrative and regulatory framework for pharmacy audits. A fair reading of the language enacted by the legislature does not lead to the conclusion that the legislature intended (expressly or by implication) to create a private right of action.

The third <u>Holbert</u> requirement is that implying a private cause of action must be consistent with the express purposes of the Act. The purpose of the Pharmacy Audit Integrity Act is to establish uniform and minimum standards for the audit of pharmacy records—a purpose which does not necessarily square with the creation of a private cause of action.

None of the three <u>Holbert</u> requirements are satisfied by the Pharmacy Audit Integrity Act. The third requirement is fairly debatable, but the court readily reaches its conclusions as to the first two.

2. <u>The Patient's Right to Pharmacy Choice Act</u>

The analysis of the Patient's Right to Pharmacy Choice Act, 36 O.S. §§ 6958 *et seq.*, is similar because no language within this Act explicitly provides a private cause of action to enforce it.

As for the first <u>Holbert</u> requirement, the stated purpose of the Patient's Right to Pharmacy Choice Act is "to establish minimum and uniform access to a provider and standards and prohibitions on restrictions of a patient's right to choose a pharmacy provider." 36 O.S. § 6959. This purpose benefits both pharmacies and the public. Plaintiffs' own arguments reflect this fact, as plaintiffs argue the Act is "intended to benefit all pharmacies operating in Oklahoma and all patients residing and using pharmacies in Oklahoma." Doc. no. 41, pp. 15-16. The Act is not for the "especial benefit" of any group.

The second requirement also is not met. The Patient's Right to Pharmacy Choice Act requires the Insurance Commissioner to provide a process for receiving complaints about violations of the Act. 36 O.S. § 6966(A). It also requires the Commissioner to establish a Patient's Right to Pharmacy Choice Advisory Committee to review complaints, hold hearings, levy fines, etc., regarding a PBM's violation of the Act. *Id.* at § 6966(B). These provisions do not suggest the legislature intended to create a private cause of action to enforce the Act; instead, they suggest the opposite.

Third, the Act's purpose, which is to establish uniform access to a provider and uniform standards and prohibitions on restrictions of a patient's right to choose

a pharmacy provider, is arguably at odds with the creation of a private cause of action. As was the case with the court's analysis under the Pharmacy Audit Integrity Act, this third point is fairly debatable, but, given the court's conclusions as to the first two, that is immaterial to the result the court reaches here.

None of the three <u>Holbert</u> requirements are satisfied by the Patient's Right to Pharmacy Choice Act.

### 3. <u>Impact on the Statute-Based Claims</u><br><u>For Declaratory or Injunctive Relief</u>

Based on the above analysis, neither the Pharmacy Audit Integrity Act nor the Patient's Right to Pharmacy Choice Act creates a private cause of action.[13]

The complaint's claims for declaratory or injunctive relief are founded on these Acts. Without a private cause of action created by either Act, these claims are improper requests for fact-findings not tethered to any underlying law. Consequently, the requests for declaratory and injunctive relief fail to state a plausible claim for relief. *See*, <u>Terry v. Health Care Service Corp.</u>, 344 F. Supp. 3d 1314, 1323-24 (W.D. Okla. 2018) (the Affordable Care Act does not create an explicit cause of action; as a result, the Declaratory Judgment Act does not create a private cause of action to enforce the ACA; dismissing claim seeking declaratory judgment, for failure to state a claim); <u>Glanville v. Dupar, Inc.</u>, 727 F. Supp. 2d 596, 602 (S. D. Tex. 2010) ("plaintiffs cannot recast their claims of FICA [Federal Insurance Contribution Act] and FUTA [Federal Unemployment Tax Act]

---

[13] Plaintiffs rely on <u>Rabin v. Bartlesville Redevelopment Trust Auth.</u>, 308 P.3d 191 (Okla. Civ. App. 2013) to argue otherwise. The court is not persuaded. <u>Rabin</u> involved the Oklahoma Open Meeting Act and is distinguishable in important respects. It is not precedential and does not control here.

violations, for which there is no private right of action, as one for declaratory judgment and injunctive relief. Because there is no private cause of action, the claim for declaratory and injunctive relief fails as a matter of law.").

Prime is entitled to dismissal from the claims for declaratory or injunctive relief as these claims are premised on statutes which do not provide a private cause of action.

B. <u>Tortious Interference with Business Relations</u>

This leaves for consideration the tort claim alleged by Medic on its own behalf (not on behalf of a class). Medic alleges tortious interference with business relations against Prime (and against the other defendants, on whose behalf Prime allegedly acted with apparent authority). The allegations most pertinent to this claim are summarized below.

The complaint alleges that at times relevant to this action, Medic has been engaged in the business of serving as the pharmacy for patients in or around Shattuck, Oklahoma, and in Ellis County, who carry BCBSOK insurance, and that Prime was aware of this business relationship. Doc. no. 1-4, ¶¶ 70-71.

The complaint alleges "Prime tortuously [sic] interfered with the business relationship between Medic and their patients living in or around Shattuck, Oklahoma and Ellis County, Oklahoma who carry BCBSOK insurance, without Medic's authorization or approval and in breach of 36 O.S. § 6961(D) and 36 O.S. § 6962(B)(1) [provisions in the Patient's Right to Pharmacy Choice Act]." *Id*. at ¶ 72.

The complaint alleges that "[o]n or about February 2, 2021, Prime mailed to Rehder, and numerous other similarly situated patients of Medic, letter

correspondence … purporting to provide Rehder notice Medic would be terminated from insurance networks managed by Prime on the Termination Date." *Id*. at ¶ 46.

The complaint alleges that "Prime's tortious interference was malicious, wrongful and intentional, and was neither justified, privileged, nor excusable." *Id*. at ¶ 73.

The complaint alleges that due to Prime's tortious interference with Medic's business relations, Medic has sustained financial losses in excess of $10,000.00. *Id*. at ¶ 74.

As stated in <u>Wilspec Technologies, Inc. v. Dunan Holding Group, Co., Ltd.,</u> 204 P.3d 69 (Okla. 2009):

> Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) <u>the interference was with an existing contractual or business right</u>; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage. ‼

*Id*. at 74 (emphasis added, citations omitted).

As applied here, the first element requires plausible allegations that Prime interfered with an existing business right. The only conceivable business right which Medic could try to rely on in the context of this action is a purported right of Medic, a pharmacy, to transact business with its patients (customers). No such right has been alleged, nor could it be, as customers are free to go elsewhere to fill their prescriptions. Accordingly, the patient (or customer) relationship upon which Medic necessarily relies is not founded on a business right in the sense required for this type of tort claim. *See generally,* <u>Cohlmia v. St. John Medical Center</u>, 693 F.3d 1269, 1285-86 and n.9 (10th Cir. 2012) (addressing Oklahoma's cause of action for

tortious interference with business or contractual relations; plaintiff-doctor argued that when medical center suspended his privileges, he and his patients were forced to leave the Tulsa market; court of appeals noted the relationship between a doctor and patient is at-will, although it ultimately upheld summary judgment on the ground that there was no proof of damages); Bradshaw v. Uber Technologies, Inc., 2017 WL 2455151, *3 (W.D. Okla. June 6, 2017) (granting judgment on the pleadings on claim of tortious interference with business relations; plaintiff argued Uber had interfered with the continuing business relationship between drivers and their fares, alleging riders would have paid a gratuity to drivers absent Uber's interference; court found "Plaintiff has failed to allege any facts to establish a business or contractual **right** vis-à-vis the riders with which Defendants interfered" (emphasis in original).[14]

Medic has not alleged, and cannot allege, facts to satisfy the first element of a claim for tortious interference with business relations. Prime will be dismissed from this claim.

### C.  Summary of Conclusions with Respect to Prime's Motion

The court has found no private cause of action is created by the Pharmacy Audit Integrity Act or the Patient's Right to Pharmacy Choice Act.  As a result, Prime is entitled to dismissal from plaintiffs' claims for declaratory and injunctive relief as these claims are premised on statutes which do not create private rights of action.

The only other claim alleged in this action is Medic's damages claim for tortious interference with business relations.  This claim fails given the nature of the

---

[14]  The court noted the claim of tortious interference with prospective economic advantage might have been a better fit, but plaintiff had not asserted such a claim.  2017 WL 2455151 at *3, n.1.

relationship between Medic and its patients (customers). Accordingly, Prime is entitled to dismissal from this claim as well.

## VI. Impact on HCSC and BCBSOK

The court's rulings regarding the insufficiency of the claims alleged against Prime apply equally to the claims alleged against HCSC and BCBSOK. These defendants are entitled to dismissal from the claims alleged against them in the complaint.

## VII. Conclusion

After careful consideration, plaintiffs' motion to remand is **DENIED**. Doc. no. 30.

The motion to dismiss filed by Health Care Service Corporation and Blue Cross and Blue Shield of Oklahoma, a division of Health Care Service Corporation, is **GRANTED**. Doc. no. 33. The motion to dismiss filed by Prime Therapeutics, LLC, is also **GRANTED**. Doc. no. 35.

The claims for declaratory and injunctive relief are **DISMISSED** with prejudice because they are based on Acts which create no private cause of action. The tort claim, as currently alleged, is **DISMISSED** without prejudice. All dismissals are under Rule 12(b)(6), Fed. R. Civ. P.

Without need of a motion, Medic is hereby **GRANTED** leave to file, if it so desires, an amended complaint asserting, on its own behalf only, a claim for tortious interference with prospective economic advantage.[15] The claims that are, by this order, dismissed, may be–for record purposes only–incorporated by reference into

---

[15] The court notes but does not address defendants' argument, which is hypothetical at this stage, that a claim for tortious interference with prospective economic advantage would also fail. Doc. no. 35, p. 18, n.9.

an amended complaint. When this action proceeds to entry of final judgment, those claims will be treated as dismissed.

If Medic (or Rehder) desire to file an amended complaint attempting to assert any claims other than (or in addition to) a claim, by Medic, for tortious interference with prospective economic advantage, leave of court to do so must be sought by motion filed within fourteen days from the date of entry of this order. If such a motion *is not* filed, then any amended complaint asserting a claim (by Medic) for tortious interference with prospective economic advantage must be filed within fourteen days from the date of entry of this order. If such a motion *is* filed, a due date for any amended complaint permitted by the court will be established by separate order.

Absent (i) a timely-filed amended complaint asserting a claim (by Medic) for tortious interference with prospective economic advantage, or (ii) a timely-filed motion for leave to file an amended complaint attempting to assert other claims (as set forth above, with or without a claim by Medic for tortious interference with prospective economic advantage), this action will then be dismissed and judgment entered.

IT IS SO ORDERED this 29th day of June, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0221p008.docx